(No. 48329.-)

THOMAS G. O'LEARY, Appellee, v. ROBERT H. ALL-PHIN, Director of the Department of Revenue, *et al.*, Appellants.

*Opinion filed November 15, 1976.*

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Patricia Rosen, Jayne A. Carr, and Steven Rosenberg, Assistant Attorneys General, of counsel), for appellants.

Ditkowsky and Contorer, of Chicago (Kenneth K. Ditkowsky, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

On September 2, 1973, plaintiff, Thomas G. O'Leary, was arrested by agents of the Illinois Department of Revenue and charged with illegal transportation into Illinois of 27 cartons of unstamped cigarettes without a permit in violation of section 9c of the Cigarette Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 453.9c). He subsequently filed a class action in the circuit court of Cook County against Robert H. Allphin, Director of the Illinois Department of Revenue, and other defendants, in which he alleged that his car was stopped on the highway by two Illinois revenue agents just after he crossed the Indiana border while returning to his home in Illinois from Indiana where he and his family had purchased cigarettes for their own use; the car was searched without a warrant; he was required to accompany the agents to a police station in Calumet City where he was arrested and charged with illegal transportation of unstamped cigarettes without a permit; and his car and the goods contained therein were seized and confiscated. The complaint further alleged that the defendants' actions violated various provisions of the State and Federal constitutions and sought punitive damages as well as injunctive relief prohibiting further enforcement of the Cigarette Tax Act against persons not engaged in the business of selling cigarettes who bring untaxed cigarettes into Illinois. Defendants' answer alleged that their actions were lawful and in accordance with the Cigarette Tax Act, particularly the transporter provisions of section 9c and those of section 18 which provide that revenue agents may make arrests and seizures without a warrant when violations of the Act occur in their presence (ch. 120, par. 453.18). At the conclusion of the trial, the circuit court entered an injunction order permanently restraining defendants from directly or indirectly enforcing sections 9c and 18 against individuals transporting cigarettes into Illinois for their own use and not for sale from

any State in the United States. On appeal by defendants, the appellate court affirmed the injunction order (*O'Leary v. Allphin* (1975), 35 Ill. App. 3d 223), and we granted leave to appeal.

At the outset, it is appropriate to note that the charges against plaintiff for illegal transportation of untaxed cigarettes into Illinois without a permit were dismissed, his car was returned to him and he did not appeal from the decision of the circuit court in the class action proceeding nor from any provisions of the injunction order entered therein. Also, neither the trial court nor the appellate court passed upon the constitutionality of any of the statutory provisions involved in this case. Accordingly, there are no issues before this court concerning the legality of plaintiff's arrest, the search and seizure of his car and its contents, the general procedures followed by the revenue agents at the time of his arrest or the constitutionality of the statutory provisions in question. The sole issue to be decided on this appeal is whether the circuit court's permanent injunction order reflects a correct interpretation of the transporter provisions of section 9c of the Cigarette Tax Act and is consistent therewith.

The injunction order limited the enforcement of sections 9c and 18, which provide as follows:

"Sec. 9c. 'Transporter' means any person transporting into or within this State original packages of cigarettes which are not tax stamped as required by this Act, except:

(a) A person transporting into this State unstamped original packages containing a total of not more than 2000 cigarettes in any single lot or shipment;

(b) a licensed cigarette distributor under this Act;

(c) a common carrier;

(d) a person transporting cigarettes under Federal internal bond or custom control that are non-tax paid under Chapter 52 of the Internal Revenue Code of 1954, as amended;

(e) a person engaged in transporting cigarettes to a

cigarette dealer who is properly licensed as a distributor under the Illinois Cigarette Tax Act or the Illinois Cigarette Use Tax Act, or under the laws of any other state, and who has in his possession during the course of transporting such cigarettes a bill of lading, waybill, or other similar commercial document which was issued by or for a manufacturer of cigarettes who holds a valid permit as a cigarette manufacturer under Chapter 52, Internal Revenue Code of 1954, as subsequently amended, and which shows that the cigarettes are being transported by or at the direction of such manufacturer to such licensed cigarette dealer.

Any transporter desiring to possess or acquire for transportation or transport upon the highways, roads or streets of this State more than 2000 cigarettes which are not contained in original packages that are Illinois tax stamped shall obtain a permit from the Department authorizing such transporter to possess or acquire for transportation or transport the cigarettes, and he shall have the permit in the transporting vehicle during the period of transportation of the cigarettes. The application for the permit shall be in such form and shall contain such information as may be prescribed by the Department. The Department may issue a permit for a single load or shipment or for a number of loads or shipments to be transported under specified conditions.

Any cigarettes transported on the highway, roads or streets of this State under conditions which violate any requirement of this Section, and the vehicle containing such cigarettes, are subject to seizure by the Department, and to confiscation and forfeiture in the same manner as is provided for in Section 18a of this Act. Any such confiscated and forfeited property shall be sold in the same manner and under the same conditions as provided for in Section 21 of this Act, with the proceeds from any such sale being deposited in the State Treasury.

Any person who violates any requirement of this Section is guilty of a Class A misdemeanor.

Any transporter, who, with intent to defeat or evade or with intent to aid another to defeat or evade the tax imposed by this Act, at any given time, transports 40,000 or more cigarettes upon the highways, roads or streets of this State under conditions which violate any

requirement of this Section shall be guilty of a Class 4 felony." Ill. Rev. Stat. 1973, ch. 120, par. 453.9c.

"Sec. 18. Any duly authorized employee of the Department may arrest without warrant any person committing in his presence a violation of any of the provisions of this Act, and may without a search warrant seize any original packages not tax stamped or tax imprinted underneath the sealed transparent wrapper of such original packages in accordance with the provisions of this Act and any vending device in which such packages may be found, and such original packages or vending devices so seized shall be subject to confiscation and forfeiture as hereinafter provided." Ill. Rev. Stat. 1973, ch. 120, par. 453.18.

The injunction order included the following findings which illustrate the circuit court's reasoning in support of issuance of the injunction:

"1. That the real question presented to this Court for answer is the extent, if any, of the application of the Cigarette Tax Act, Chapter 120, Section 453.1 et al, Illinois · Revised Statutes to plaintiff and all of those similarly situated, namely, individuals not engaged in the business of selling cigarettes who purchase cigarettes in some state other than Illinois for their own use and bring them into Illinois.

2. By the very language of the Act, it is 'in relation to a tax upon persons engaged in the business of selling cigarettes ***.'

3. It is a revenue measure imposing a tax on said persons and providing for the rate, collection and payment and related procedures.

Its purpose is to raise revenue and provides penalties for violation.

4. In Section 453.9c the Legislature has defined one who transports cigarettes into Illinois and provides he may transport 2,000 cigarettes without a permit but when he seeks to transport more he must apply for and secure a permit. The uncontradicted evidence is that the only permit the Department of Revenue issues under this Act is to persons transporting cigarettes other than for their own use. A clear indication that even the Department

does not place an individual carrying cigarettes for his own use within the Act.

5. Notwithstanding what the Department's interpretation may be, it is this Court's opinion that Section 453.9c does not apply to individuals carrying into Illinois from another State, cigarettes in excess of 2,000 in number for their own use and not for resale.

6. It is this Court's opinion that it was never the intention of the Legislature that the Cigarette Tax Act, Section 453.9c should apply to persons situated as is the plaintiff in this case.

\* \* \*

8. It [the legislature] does have the power and authority, however, to levy a tax on the use of those cigarettes brought into Illinois and the Legislature has exercised that right by the enactment of the Cigarette Use Tax Act.

9. By the defendants' own argument they admit the Cigarette Use Tax Act is complementary to the Cigarette Tax Act. If it were not so, then it is a needless enactment of our Legislature.

10. Defendants' evidence and argument strongly presents a case for Revenue. That is a proper objective but to say if they did not stop autos, arrest citizens and confiscate their autos, the citizens would not pay the tax, is an indictment of their operation and efficiency and not an excuse to violate the law to raise revenue.

11. It is not necessary, nor does this Court say Section 453.9c or 453.18 is unconstitutional. This Court says only that Section 453.9c and 453.18 does not apply to individuals carrying into Illinois cigarettes purchased outside of Illinois for their own use and not engaged in the business of selling them. \*\*\*"

The operative portion of the injunction order decreed that defendants "be restrained permanently from directly or indirectly enforcing Section 453.9c and Section 453.18, Chapter 120 Illinois Revised Statutes, against individuals transporting cigarettes into Illinois for their own use and not for sale from any State in the United States."

In affirming the injunction order, the appellate court placed principal reliance upon what it considered to be an

inconsistency between section 9c of the Cigarette Tax Act and section 12(a) of the Cigarette Use Tax Act, which provides in pertinent part:

> "When cigarettes are acquired for use in this State by a person (including a distributor as well as any other person), who did not pay the tax herein imposed to a distributor, such person, within 3 days after acquiring such cigarettes, shall file with the Department a return declaring the possession of such cigarettes and shall transmit with the return to the Department the tax imposed by this Act." Ill. Rev. Stat. 1973, ch. 120, par. 453.42(a).

The appellate court noted that the Cigarette Tax Act, which imposes a tax on persons engaged in the business of selling cigarettes at retail, and the Cigarette Use Tax Act, which imposes a tax upon the privilege of using cigarettes in Illinois, are complementary taxing statutes which are *in pari materia* and must be construed accordingly. (*Granite City Steel Co. v. Department of Revenue* (1964), 30 Ill. 2d 552; *Spring Hill Cemetery v. Ryan* (1960), 20 Ill. 2d 608; *People ex rel. Nordstrom v. Chicago and North Western Ry. Co.* (1957), 11 Ill. 2d 99.) The court observed that the Cigarette Use Tax Act contains no transporter provisions such as those found in section 9c of the Cigarette Tax Act but instead implicitly permits importation of untaxed cigarettes by providing that when such cigarettes are acquired for use in Illinois a declaration of possession must be filed and the tax paid by the consumer within 3 days after acquiring the cigarettes. The court also noted the contention that an individual importing in excess of 2,000 unstamped cigarettes for his own use would incur a tax liability under the Cigarette Use Tax Act and also a criminal liability under section 9c of the Cigarette Tax Act. The court was of the opinion that the legislative purpose was not to enact two revenue measures of conflicting applicability upon the same class of taxpayer. Accordingly, the appellate court determined that the definition of "transporter" in section 9c should be limited

to persons engaged in the business of selling cigarettes in Illinois. The court concluded:

"In the instant case, we therefore do no more than make explicit what we believe had formerly been implicit in the general definition of 'transporter' in paragraph 453.9c (section 9c of the Cigarette Tax Act) by limiting definition to persons engaged in the business of selling cigarettes in this State. That is, a transporter, as generally defined therein, is any person who is engaged in the business of selling cigarettes in this State, who transports into or within this State original packages of cigarettes which are not stamped as required by the Cigarette Tax Act. Under such construction, an individual who imports tax-unstamped cigarettes for his own use, regardless of quantity, is not subject to the provisions of the Cigarette Tax Act but instead is subject to the provisions of the Cigarette Use Tax Act and the tax thereunder." 35 Ill. App. 3d 223, 229.

It is apparent that the transporter provisions of section 9c do not in themselves impose a tax but rather are intended as an aid to the enforcement of the Cigarette Tax Act. Similar statutes requiring persons who desire to transport untaxed cigarettes within a State to obtain a permit or have specified documents in their possession have been upheld in other jurisdictions over various constitutional objections, including the contention that such statutes are a burden on interstate commerce. (*People v. Asta* (1953), 337 Mich. 590, 60 N.W.2d 472; *People v. Locricchio* (1955), 342 Mich. 210, 69 N.W.2d 723; *State v. Sedacca* (1969), 252 Md. 207, 249 A.2d 456; *State v. Gilman* (1971), 113 N.J. Super. 302, 273 A.2d 617; also see Annot., *Validity, Construction, and Application of State Statutes Forbidding Possession, Transportation, or Sale of Unstamped or Unlicensed Cigarettes or other*

*Tobacco Products,* 46 A.L.R.3d 1342 (1972).) In *Asta,* the Supreme Court of Michigan noted that "the requirement with reference to the transporter's permit is designed to promote the enforcement of the cigarette tax act and to assist officers charged with duties in that respect in detecting violations of the law. So viewed it may not be regarded as an undue burden on interstate commerce." (337 Mich. 590, 605-06, 60 N.W.2d 472, 480.) Likewise, in *Sedacca* the court of appeals of Maryland held: "The police regulation in Section 455 requiring the possession of the prescribed documents by interstate transporters of cigarettes was necessary for the safeguarding of the State's vital interest in preventing the diversion of cigarettes into illicit channels of trade in Maryland where the State would be unable to collect its tax. The police regulation is a reasonable one, is one with which honest and law abiding citizens can readily comply and is no impediment to the free flow of trade in commerce between the several States." 252 Md. 207, 217, 249 A.2d 456, 463.

In our opinion, the interpretation of section 9c adopted by the trial and appellate courts is inconsistent with the statutory language and is contrary to the manifest legislative intent. The enactment of section 9c implies a legislative determination that taxes due the State of Illinois under the Cigarette Tax Act may be lost unless the Department of Revenue is able to monitor the transportation of over 2,000 untaxed cigarettes in single lots or shipments through the permit procedures set forth therein. We do not agree that the legislature intended to limit the term "transporter" to only those engaged in the business of selling cigarettes or that it was intended that persons bringing cigarettes into Illinois for their own use are not "transporters" within the meaning of that section. The statute states in unqualified terms that " 'Transporter' means any person transporting into or within this State original packages of cigarettes which are not tax stamped as required by this Act, except ***." (Ch. 120, par.

453.9c.) We note that in section 1 of the Cigarette Tax Act the term "distributor" is defined as "any person engaged in the business of selling cigarettes in this State ***." (Ch. 120, par. 453.1.) The fact that the legislature did not similarly qualify the term "any person" in section 9c as it did in section 1 indicates to us that no such qualification was intended. Likewise, if it was intended that persons bringing cigarettes into Illinois for their own use were not subject to the provisions of section 9c, we think the legislature would have included such persons among those specifically excepted.

We do not concur with plaintiff's contention that this court's decision in *Johnson v. Daley* (1949), 403 Ill. 338, requires a contrary interpretation of section 9c. That case, which was decided before the enactment of the Cigarette Use Tax Act, dealt with the validity of a 1943 amendment to the Cigarette Tax Act. The Cigarette Tax Act, as in effect at that time, imposed a tax upon persons engaged in business as distributors of cigarettes. The 1943 amendment expanded the definition of the term "distributor" to include "any person who, in any one calendar year, brings or causes to be brought into this State for consumption more than ten (10) cartons of original packages of cigarettes." This court there held that the amendment was an invalid attempt to impose a tax on persons who were clearly not engaged in an occupation which the Cigarette Tax Act purported to cover. We further stated: "The amendment, by the added definition of 'Distributor,' results in extending the tax to a class of persons not included in the original act and not consistent with its title and therefore contravenes section 13 of article IV of the constitution." (403 Ill. 338, 343.) The amendment was held invalid for the further reason that it operated to impose a tax upon interstate commerce in violation of the commerce clause of the Federal Constitution.

Section 9c of the Cigarette Tax Act under consideration in this case is clearly distinguishable from the 1943

amendment construed in *Johnson*. Section 9c does not impose a tax nor does it depend upon arbitrary classification such as that involved in *Johnson*. It is further apparent that it does not create a presumption that every person who transports more than 2,000 untaxed cigarettes is a retailer subject to taxes imposed by the Cigarette Tax Act. Consistent with the overall enforcement of the Cigarette Tax Act, it simply requires that persons desiring to transport substantial quantities of untaxed cigarettes must first obtain a permit irrespective of the intended disposition of the cigarettes. Similarly, we do not concur with the argument that since section 9c appears in the Cigarette Tax Act, its provisions must be construed as applying only to those persons subject to the taxes imposed by that act. As indicated above, it appears to us that the legislature intended to require compliance with the permit procedures of section 9c by all persons, except those specifically excepted, who transport untaxed cigarettes into Illinois even though such persons in every instance may not be subject to the taxes imposed by the Cigarette Tax Act. Such a provision is not inconsistent with either the title or purposes of the Act.

It would seem that one of the principal reasons for requiring transporter permits is to receive prior notification of the purpose of the intended transportation and the ultimate disposition of the untaxed cigarettes; *i.e.,* whether for sale, personal use and consumption, transfer to a third person or other disposition. In this regard, it may well be important to the enforcement of the Cigarette Tax Act for the Department to have a means of determining the quantity, destination and frequency of transportation of untaxed cigarettes by persons who claim to be bringing them into Illinois for their own use and consumption. To exempt such persons from the requirements of section 9c could very well destroy the effectiveness of those provisions.

We also find no conflict in the applicability of section

9c of the Cigarette Tax Act and section 12 of the Cigarette Use Tax Act to persons transporting untaxed cigarettes into Illinois for their own use. The latter provision requires filing of a return and a payment of applicable use taxes within 3 days. The permit provisions of section 9c of the Cigarette Tax Act have a different purpose as discussed above. We see no inconsistency in the requirement that a person intending to bring untaxed cigarettes into Illinois for his personal use and consumption must obtain a permit as required by section 9c of the Cigarette Tax Act and subsequently file a return and pay the applicable use taxes as required by section 12 of the Cigarette Use Tax Act. While section 12 of the Cigarette Use Tax Act may implicitly authorize a person to transport untaxed cigarettes into Illinois from other States for his own use and consumption, it does not imply that there are no other provisions in the State's cigarette tax laws which may be applicable to such activities.

There was no evidence that any persons who had been stopped on the highways by Department of Revenue agents for illegal transportation of cigarettes without a permit had ever applied for a transporter's permit under section 9c. The uncontradicted evidence to the contrary was that the Department had never received any *bona fide* request for a permit from persons intending to transport untaxed cigarettes for their own use. However, the testimony was indefinite and inconclusive as to the availability of permit application forms and the procedures which an individual could follow in obtaining a permit. Representatives of the Department's Investigation Division office in Chicago testified that no application forms were available in that office and that permits could only be issued by the Director of Revenue. In our opinion, section 9c clearly contemplates that the Department of Revenue will make application forms readily available so that law-abiding citizens may apply for and obtain transporter permits without undue delay. It must be remembered that

the purpose of the transporter provisions of section 9c are not to prevent persons from purchasing cigarettes in other States and bringing them into Illinois but rather to provide the Department with a means by which it can ascertain that substantial shipments of untaxed cigarettes will not be disposed of in Illinois without the payment of taxes which are due and payable under the Cigarette Tax Act. If the Department itself has not complied with the law by making application forms readily available so that permits may be issued without burdensome delay, then it would be unconscionable for the Department to make arrests and otherwise enforce the provision against persons who are alleged to have violated the law for failure to obtain a permit. Although we must set aside the permanent injunction order for the reasons stated above, we do so on the presumption that the Department will perform its duties in accordance with law with respect to the availability of application forms and the adoption of procedures pursuant to which transporter permits may be readily applied for and obtained.

Accordingly, the judgments of the appellate and circuit courts are reversed.

*Judgments reversed.*